**CHILEAN LINE INC., Libelant-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee,**

and

**Main Ship Repair Corp., Respondent.**

**No. 376, Docket 29275.**

United States Court of Appeals Second Circuit.

Argued March 10, 1965.

Decided April 27, 1965.

Paul F. McGuire, New York City (Kirlin, Campbell & Keating, and Charles N. Fiddler and John M. Linsenmeyer, New York City, on the brief), for appellant.

Louis E. Greco, Atty. in Charge, New York Office Admiralty & Shipping Section, Dept. of Justice (John W. Douglas, Asst. Atty. Gen., Morton S. Hollander, Chief, Appellate Section, Civil Div., Dept. of Justice, Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, Philip A. Berns, Atty., Admiralty & Shipping Section, Dept. of Justice, on the brief), for appellee.

Before SMITH and MARSHALL, Circuit Judges, and METZNER, District Judge.*

J. JOSEPH SMITH, Circuit Judge.

Libelant, Chilean Line Inc., in a suit in admiralty, seeks to recover from the United States by way of garnishment approximately $40,000 of the money allegedly owed by the Government to the Main Ship Repair Corp., respondent, for repairs made on two Navy vessels to satisfy libelant's claim for damages against respondent. The claim arose out of respondent's use of libelant's Brooklyn, New York pier for the performance of the repair work, and for services and supplies furnished by libelant to respondent with respect to the same repair contract. In its libel, Chilean alleged that it is a Delaware corporation with an office and place of business in the Southern District of New York, that respondent is a New York corporation having no office or place of business in the Southern District, and that the United States has consented to garnishment under the Suits in Admiralty Act, 46 U.S.C. § 741 et seq., and the Public Vessels Act, 46 U.S.C. § 781 et seq., and prayed, among other things, that process with a clause of foreign attachment issue against the United States to satisfy the decree in the event that respondent could not be found within the Southern District. The Clerk of the Court refused to issue process against the Government since he knew of no precedent for attachment under like circumstances, and the District Court for the Southern District, John M. Cashin, J., denied libelant's cross-motion for an order directing the issue of process on the ground that the United States is immune to garnishment and has not waived that immunity under either the Suits in Admiralty Act or the Public Vessels Act.

We find that this court has jurisdiction to review the denial of this motion, and we hold that respondent can be found in the Southern District within the meaning of Rule 2 of the Supreme Court Rules of Practice in Admiralty and Maritime Cases, that, accordingly, libelant cannot acquire *in personam* jurisdiction over respondent by a writ of foreign attachment in that District, and that the United States has not waived its immunity to garnishment under either of the above named statutes. The order of the court below is affirmed.

I.

■ This court has jurisdiction to pass on an appeal from a denial of a writ of foreign attachment in admiralty. In Swift & Co. Packers v. Compania Colombiana Del Caribe, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950), the Court held that an order vacating foreign attachment was appealable as a right collateral to the action which was too important and too independent of the cause itself to require that.appellate review be deferred until the principal matter is adjudicated. "Appellate review of the order dissolving the attachment at a later date," said the Court, "would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible." Id. at 689, 70 S.Ct. at 865. Cf. Glaser v. North American Uranium & Oil Corp., 222 F.2d 552 (2 Cir. 1955). Here the denial of the attachment has the same effect as the vacating of a previously granted attachment since in both cases the property sought to be levied upon may be irrevocably lost by the time the issue is finally resolved at trial.

II.

■ Rule 2 of the Supreme Court Rules of Practice in Admiralty and Maritime Cases is concerned with the procedure for obtaining *in personam* jurisdiction in the admiralty. Personal jurisdiction can be acquired either by the service of a simple monition or warrant of arrest on the person of the respondent or by the attachment of the respondent's goods and chattels or credits and effects in the hands of garnishees if the respondent "shall not be found within the dis-

* Sitting by designation.

trict." [1] In the latter cases, where respondent cannot be found within the district in which suit is instituted, the writ of foreign attachment serves a dual purpose—in addition to providing the necessary *in personam* jurisdiction over the respondent through the attachment of his property, it also serves to assure satisfaction of any decree in libelant's favor. See Seawind Compania v. Crescent Line, Inc., 320 F.2d 580, 581–582 (2 Cir. 1963). The writ, however, may not be utilized solely for the purpose of acquiring security; "security cannot be obtained except as an adjunct to obtaining jurisdiction." Id. at 582. Thus, in passing on a motion to direct the issue of such process or to vacate a foreign attachment, the crucial issue is whether respondent could have been found within the district in which the action was commenced. Since the Admiralty Rules do not define the phrase "found within the district," the courts have been obliged to provide their own interpretation of that requirement and, in so doing, have settled upon a two-fold inquiry: (1) whether the respondent can be found within the district in terms of jurisdiction, and (2) if so, whether the respondent can also be found there for service of process. United States v. Cia Naviera Continental S. A., 178 F.Supp. 561, 563 (S.D.N.Y. 1959). See Seawind Compania v. Crescent Line, Inc., supra, 320 F.2d at 582; American Potato Corp. v. Boca Grande S.S. Co., 233 F. 542 (E.D.Pa.1916). Here, this respondent is a New York corporation and as such, in accordance with concepts of due process, is subject to personal jurisdiction in all the federal and state judicial districts within the territorial limits of the State of New York, which, of course, includes the Southern District.

We also find, drawing upon federal and New York rules for service of process in actions at law, that respondent was amenable to service in the Southern District. Because neither Admiralty Rule 1, nor Rule 2, nor any of the other Admiralty Rules, specify the territorial limits for effecting service of process, we may look to the Federal Rules of Civil Procedure, in particular, and to state practice in determining where respondent was subject to service. Other courts, encountering similar procedural problems in admiralty cases, have likewise sought recourse to federal and state rules which are not in conflict with established admiralty practice and rules. For example, courts have applied Rule 4(d) (3) of the Federal Rules to the making of service on corporate respondents, Seawind Compania v. Crescent Line, Inc., supra; United States v. Cia Naviera Continental, S. A., supra; Ashcraft-Wilkinson Co. v. Compania De Navigacion Geamar, S.R.L., 117 F.Supp. 162 (S.D.N.Y.1953); and Rule 4(f) to effecting service on third-party defendants, Monsieur Henri Wines, Ltd. v. S. S. Covadonga, 222 F.Supp. 139 (D.N.J.1963); and one circuit has sanctioned service made on a non-resident vessel owner pursuant to Rule 4(f) (7) and the state watercraft statute where the suit grew out of an accident that occurred in the state, S. S. Philippine Jose Abad Santos v. Bannister, 335 F.2d 595, 598 (5 Cir. 1964); Paige v. Shinnihon Kishen, 206 F.Supp. 871 (E.D.La.1962). See also Valkenburg, K. G. v. The S. S. Henry Denny, 295 F.2d 330 (7 Cir.

---

1. Rule 2 of the Supreme Court Rules of Practice in Admiralty and Maritime Cases provides as follows:

"Suits in personam—process in—arrest in same

"In suits in personam the mesne process shall be by a simple monition in the nature of a summons to appear and answer to the suit, or by a simple warrant of arrest of the person of the respondent in the nature of a capias, as the libellant may, in his libel or information

pray for or elect; in either case with a clause therein to attach his goods and chattels, or credits and effects in the hands of the garnishees named in the libel to the amount sued for, if said respondent shall not be found within the district. But no warrant of arrest of the person of the respondent shall issue unless by special order of the court, on proof of the propriety thereof by affidavit or otherwise."

1961). Admiralty practice has been likened to that existing under Federal Rules 4(c, d, e, f). Patel Cotton Co. v. The Steel Traveler, 107 F.Supp. 191 (S.D. N.Y.1952).

Here, both the federal civil and the state rules would permit the respondent, a New York corporation, to be served in the Southern District although its principal place of business is located in another district in that state. Rule 4(f) of the Federal Civil Rules provides that a district court may issue process anywhere within the territorial limits of the state in which the district is held. And Rule 4(f) would not seem to be in conflict with the present Admiralty Rules. In its preliminary draft of proposed amendments to the Rules of Civil Procedure, intended largely to effect the unification of civil and admiralty procedure, the advisory committee, commenting on the proposed retention in Admiralty Rule 2 of the language "if the defendant shall not be found within the district," notes that while the doing business test will continue to be applied on a case to case basis to determine if defendant is subject to the jurisdiction of the particular district, Rule 4(f) will enable summons to be served on the defendant throughout the state. "Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Courts," 37–39 (March, 1964). We think that we may well hold that "found within the district" in Rule 2 should today be held to encompass the situation here.

▆▆▆ Moreover, under New York practice, service on a New York corporation can be made by simply serving the secretary of state. New York Civil Practice Laws and Rules § 311; New York Business Corporation Law, McKinney's Consol. Laws, c. 4, § 306.[2] A domestic

---

2. CPLR § 311 provides as follows:

"Personal service upon a corporation or governmental subdivision shall be made by delivering the summons as follows:

"1. upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service;

"2. upon the city of New York, to the corporation counsel or to any person designated by him to receive process in a writing filed in the office of the clerk of New York county;

"3. upon any other city, to the mayor, comptroller, treasurer, counsel or clerk; or, if the city lacks such officers, to an officer performing a corresponding function under another name;

"4. upon a county, to the chairman or clerk of the board of supervisors, clerk, attorney or treasurer;

"5. upon a town, to the supervisor or the clerk;

"6. upon a village, to the mayor, clerk, or any trustee; and

"7. upon a school, park, sewage or other district, to the clerk, any trustee or any member of the board."

In the practice commentary to that section, it is noted that § 311(1) lays to rest the distinction made in the former Civil Practice Act between service on domestic and foreign corporations in that now the same officers and agents of both may be served. The phrase "any other agent authorized by appointment or law to receive service" on behalf of the corporation would embrace service made on the secretary of state in the case of both domestic and foreign corporations under Business Corporation Law § 306(b) which reads:

"(b) Service of process on the secretary of state as agent of a domestic or authorized foreign corporation shall be made by personally delivering to and leaving with him or his deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee, which fee shall be a taxable disbursement. Service of process on such corporation shall be complete when the secretary of state is so served. The secretary of state shall promptly send one of such copies by registered mail, return receipt requested, to such corporation, at the post office address, on file in the department of state, specified for the purpose. If a domestic or authorized foreign corporation has no such address on file in the department of state, the secretary of state shall so mail such copy, in the

corporation such as the respondent is subject to such service in the state regardless of where in the state its principal place of business is located.

■ Thus, since the respondent Main could be found within the Southern District both in terms of doing business and service of process, the writ of foreign attachment was not a proper means for obtaining *in personam* jurisdiction over it.

### III.

■ In any case, irrespective of the interpretation of Rule 2, a writ of foreign attachment was inappropriate because the United States has not waived its governmental immunity to garnishment by reason of the Suits in Admiralty Act or the Public Vessels Act.

The waiver of immunity clause in the Suits in Admiralty Act provides as follows:

"In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States or against any corporation mentioned in section 741 of this title."

The waiver clause in the Public Vessels Act reads:

"A libel in personam in admiralty may be brought against the United States, or a petition impleading the United States, for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States * * *."

We do not pass upon the claim that the Suits in Admiralty Act applies to public vessels such as the warships here involved, for in neither case has the United States expressly waived its immunity to garnishment proceedings. While there is some language in Sherwood v. United States, 112 F.2d 587, 593 (2 Cir. 1940), suggesting that if the United States has by statute consented to be sued it has also consented to be garnisheed, the Supreme Court, in reversing that decision on other grounds, 312 U.S. 584, 61 S.Ct. 767, 85 S.Ct. 1058 (1941), pointed out that it was improbable that the United States would consent to be sued, without expressly so providing in the waiver statute, in litigations in which issues between the plaintiff and third parties are to be adjudicated. To hold otherwise, said the Court, would require the Government, in order to protect its interests, not only to litigate the claim upon which it has consented to be sued, but also to make certain that the claimant's right as against the judgment debtor to maintain the suit is properly adjudicated. Id. at 591, 61 S.Ct. 767.

Libelant's reliance on F. H. A. v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), is misplaced. Although the Court in that case broadly construed the waiver of immunity provision of the National Housing Act to include garnishment proceedings against the Federal Housing Administration, the decision is impliedly, if not expressly, limited to a garnishment action against a governmental agency and is predicated on the Court's finding that "no grave interference with the federal function" would result. Moreover, the action was instituted by a claimant who had already reduced to judgment his claim against the third person. Here, libelant is attempting to garnish directly funds of the United States at a time when libelant's claim

---

case of a domestic corporation, in care of any director named in its certificate of incorporation at his address stated therein or, in the case of an authorized foreign corporation, to such corporation at the address of its office within this state on file in the department."

See New York Business Corporation Law § 304(a) providing as follows:

"(a) The secretary of state shall be the agent of every domestic corporation and every authorized foreign corporation upon whom process against the corporation may be served."

against the respondent is unliquidated and disputed; accordingly, the likelihood of grave interference is substantial.

It is highly improbable that the Congress would allow the United States to be a mere collection agency for claims between other parties without expressly so providing. The denial of the motion for an order directing issuance of process with a clause of foreign attachment is affirmed.