09-1733-cv
Transfield ER Cape Ltd. v. Industrial Carriers, Inc.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2008

(Submitted: May 5, 2009)                                    Decided: July 8, 2009)

Docket No. 09-1733-cv

TRANSFIELD ER CAPE LTD.,

     *Plaintiff-Appellant*,

     -v.-

INDUSTRIAL CARRIERS, INC., also known as ICI, and WEAVER INVESTMENTS, INC.,

     *Defendants-Appellees.*[*]

Before: FEINBERG, WINTER, and CABRANES, *Circuit Judges*.

Plaintiff sought from the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge*) a Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims ("Rule B") against two defendants. One defendant was a party to a charter agreement with plaintiff and was registered as a corporation with the New York Department of State. Plaintiff alleged that the other defendant, which was not registered as a corporation in New York, was the corporate alter ego of the contracting party. We hold that the alter ego of a corporation registered with the New York Department of State—and therefore "found within the district" for the purposes of Rule B—is likewise "found within the district," and therefore its property is not subject to maritime attachment.

Affirmed.

---

[*] The Clerk of Court is directed to amend the official caption in this case to reflect the listing of the parties above.

George Michael Chalos, Chalos & Co., P.C., Oyster Bay, NY,
*for Plaintiff-Appellant.*

Garth S. Wolfson, Mahoney & Keane, LLP, New York, NY
*for Defendants-Appellees.*

JOSÉ A. CABRANES, *Circuit Judge*:

We consider whether a corporate alter ego of a company registered with the New York Department of State pursuant to New York Business Corporation Law § 1304 is "found within the district" for the purposes of Rule B of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("Rule B").[1]

## BACKGROUND

The following facts are undisputed. On October 24, 2008, the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge*) granted, pursuant to Rule B, a Process of Maritime Attachment and Garnishment (the "Attachment") sought by plaintiff-appellant Transfield ER Cape Ltd. ("Transfield") in the amount of $6,414,791.86 against defendants-appellees Industrial Carriers Inc. ("ICI") and Weaver Investment Inc. ("Weaver") (collectively, "defendants"). Transfield was simultaneously pursuing arbitration in London against ICI, but not against Weaver, based on an underlying maritime charter agreement. (Transfield alleged in the arbitration that it paid ICI $4,331,250.00 for the delivery of the M.V. Cape Heron, but that ICI never delivered the vessel.) Transfield, but not Weaver, had registered as a corporation with the New York Department of State in November 2005, years before the commencement of this litigation. Before the District Court,

---

[1] Rule B of the Admiralty Rules states, in relevant part:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

Fed. R. Civ. P. Supp. R. B(1)(a).

Transfield alleged that Weaver was at all material times the corporate alter ego of ICI, and sought to attach Weaver's property even though the underlying charter dispute involved only ICI. We note that because maritime attachments are granted "on the pleadings," we assume all allegations in the complaint to be true. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 438 (2d Cir. 2006).

On November 19, 2008, garnishee BNP Paribas, acting pursuant to the Attachment, restrained funds belonging to Weaver pursuant to the Attachment. On March 6, 2009, Weaver moved to vacate the Attachment on the grounds that (1) if Weaver is not the alter ego of ICI, Transfield would not have a valid *prima facie* maritime claim against Weaver, *see id.* at 445 (holding that for a Rule B attachment to issue, plaintiff must state a "valid prima facie admiralty claim against the defendant"); or (2) if Weaver is indeed the alter ego of ICI, then Weaver would have been "found within the district" owing to ICI's registration with the New York Department of State, *see STK Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 133 (2d Cir. 2009) (holding that "a company registered with the [New York] Department of State is 'found' for purposes of Rule B").

On April 17, 2009, the District Court vacated the October 24, 2008 Attachment after concluding that "if a party is 'found within the district' under Rule B(1)(a) so too is its alter ego." *Transfield ER Cape Ltd. v. Indus. Carriers Inc.*, No. 08-cv-9064, 2009 U.S. Dist. LEXIS 33045, at *2 (S.D.N.Y. Apr. 17, 2009). The District Court noted that other district courts in our Circuit have reached the same conclusion, *see, e.g., Glory Wealth Shipping PTE Ltd. v. Indus. Carriers, Inc. et al.*, 590 F. Supp. 2d 562, 564 (S.D.N.Y. 2008) ("[I]f one defendant is present in the district for the purposes of issuing a maritime attachment, its alter egos are present as well."), but that our Court had not yet "address[ed] whether, in the context of maritime attachments, a party's presence for service of process establishes the presence of its alter ego for service of process," *Transfield ER Cape Ltd.*, 2009 U.S. Dist. LEXIS 33045, at *3 n.2.

3

Transfield filed a timely notice of appeal and, on April 30, 2009, moved in this Court for a stay of the District Court's order. We granted a temporary stay on May 1, 2009 pending resolution of Transfield's motion. On May 6, 2009, we extended the temporary stay until our further order and scheduled expedited briefing on the merits.

## DISCUSSION

We review a district court's vacatur of a maritime attachment under an "abuse-of-discretion" standard. *See, e.g.*, *Consub Del. LLC v. Schahin Engenharia Limitada*, 543 F.3d 104, 108 (2d Cir. 2008); *cf. Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (citation, alteration, and internal quotation marks omitted)).

Transfield argues that Weaver cannot be "found within the district" in its own right or derive a presence within the district from ICI's registration with the New York Department of State. There appears to be no dispute that, absent a derivative presence based on an alleged alter ego relationship between Weaver and ICI, Weaver's property would be subject to maritime attachment pursuant to Rule B. Rather, defendants—like the District Court—rely on ICI's registration and plaintiff's allegation that Weaver is ICI's corporate alter ego to justify vacatur of the Attachment.

We have long held that Rule B's requirement that a defendant be "found within the district" has two components: "'First, whether [a defendant] can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process.'" *Seawind Compania, S. A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir. 1963) (quoting *United States v. Cia. Naviera Continental S. A.*, 178 F. Supp. 561, 563 (S.D.N.Y.1959) (Weinfeld, *J.*)). Recently, we held that "a defendant's registration under New York Business Corporation Law § 1304 is sufficient to satisfy both prongs of the *Seawind* test and, therefore, a company registered with the [New York] Department of State is 'found' for purposes of Rule B." *STX Panocean (UK) Co.*, 560 F.3d at 133; *see*

*also id.* (explaining that "[i]n the modern era, although maritime commerce is still international and maritime assets are still transitory, companies that have both appointed an agent for service of process and registered in New York, consenting to jurisdiction, do not pose the same needs for maritime attachment," and observing that "when that debtor is registered to do business in New York, there are generally any number of means to prosecute a civil claim and, upon receiving judgment, collect on that claim").

Although we have never addressed the significance *vel non* of "alter ego" liability in the context of maritime attachments, we have previously observed that, in general, "alter egos are treated as one entity" for jurisdictional purposes. *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 142-143 (2d Cir. 1991) (affirming, in a diversity lawsuit brought under New York law, a district court's conclusion that it possessed personal jurisdiction "if the plaintiffs . . . can prove [that] the defendants are in fact the alter ego" of parties to a construction contract with the plaintiffs); *accord Patin v. Thoroughbred Power Boats*, 294 F.3d 640, 653 (5th Cir. 2002) ("[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.") (collecting cases). In addition, we have previously concluded that there was personal jurisdiction over a party where its corporate alter ego "participated fully in the proceedings and therefore waived any objections to lack of service of process." *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991). This conclusion is consistent with well-established New York law that "service on the alter ego of a corporation constitutes effective service on the corporation." *King v. Galluzzo Equip. & Excavating, Inc.*, No. 00-cv-6247, 2001 U.S. Dist. LEXIS 18344, at *20 (E.D.N.Y. Nov. 8, 2001) (collecting cases).

Transfield asserts that these general alter ego principles should not apply in the context of maritime attachments but offers no legal authority to support this proposition, and, in any event, we

5

find the argument unpersuasive. Accordingly, and in light of the principles of alter ego jurisdiction and service of process outlined above, we now hold that if a corporation is registered with the New York Department of State—and is therefore "found within the district" for the purposes of Rule B—that corporation's alter egos are also "found within the district" and, therefore, the property of those alter egos is not subject to maritime attachment.

To the extent that Transfield further asserts that ICI's presence within the district cannot immunizes Weaver from maritime attachments unless (1) Weaver and ICI stipulate that they are alter egos, or (2) the District Court makes a finding of fact as to the alter ego status, we disagree. The question of whether ICI and Weaver are *in fact* alter egos is irrelevant in the circumstances presented. If defendants are indeed alter egos, then ICI's registration immunizes Weaver's property from attachment. If defendants are not alter egos, then Transfield's complaint has failed to state a *prime facie* claim because the underlying dispute is between Transfield and ICI, not Transfield and Weaver. *See Aqua Stoli Shipping Ltd.*, 460 F.3d at 445 (requiring a Rule B plaintiff to state "a valid prima facie admiralty claim against the defendant"); *Glory Wealth Shipping PTE, Ltd.*, 590 F. Supp. 2d at 564 ("Because alter egos of a defendant present in the district are present in the district, [the plaintiff] can satisfy its burden only if it concedes that its alter ego allegation is baseless. [The plaintiff] could make this concession [in] the alternative, but either way it loses. If [a defendant] is an alter ego, it is found in the district; if [that defendant] is not an alter ego, there is no valid prima facie maritime claim to support an attachment.").

## CONCLUSION

Having considered all of Transfield's arguments, and having found them without merit, we AFFIRM the April 17, 2009 order of the District Court vacating the Attachment.

No costs.

6