**George Gaetano LaBANCA,
Plaintiff-Appellant,**

v.

**Geraldo OSTERMUNCHNER and Dana
Marie Ostermunchner,
Defendants-Appellees.**

**No. 80–5461.**

United States Court of Appeals,
Fifth Circuit.*
Unit B

Dec. 14, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Fowler, White, Gillen, Boggs, Villareal & Banker, Carl R. Nelson, Nathaniel G. W. Pieper, Dewey R. Villareal, Jr., Tampa, Fla., for plaintiff-appellant.

Dominic J. Baccarella, Tampa, Fla., Richard A. Bokor, Tampa, Fla., for defendants-appellees.

Before MORGAN, TJOFLAT and ANDERSON, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Plaintiff-appellant, George Gaetano LaBanca, appeals the district court's granting of a motion to quash service of maritime attachment and garnishment of funds of the appellees in the Clearwater Federal Savings & Loan Association. The relevant facts are brief. Appellant originally filed a tort claim against the appellees in a Florida court alleging injury as the result of the negligent operation of a pleasure boat in Florida waters. Appellees own the boat, and appellee Geraldo Ostermunchner was allegedly at the boat's controls when the injuries occurred. The sheriff, however, was unsuccessful in serving process because the appellees had returned to Venezuela where they are citizens and residents. Appellant then attempted to proceed against the pleasure boat *in rem* in United States District Court pursuant to its admiralty and maritime jurisdiction, but the marshal was unable to locate the vessel. Appellant then commenced this action *in personam* with a clause of foreign attachment and garnishment pursuant to the provisions of Rule B(1), Supplemental Rules for Certain Admiralty and Maritime Claims, 28 U.S.C. When the marshal was unable to serve the appellees, their funds in a Florida bank were attached. Prior to trial, appellees moved to quash the service of process of maritime attachment and garnishment claiming that they could be found "within the district" for service of process, and the motion was granted. For the following reasons, we reverse.

In 1966, civil and admiralty rules of procedure were unified for federal courts. This unification, however did not eliminate the unique procedures of admiralty practice. *See* 7A *Moore's Federal Practice* § .01

(2d Ed. 1978). Accordingly, the ancient admiralty right of attachment and garnishment continues. Rule B(1) of the Supplemental Rules states: "With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels ... *if the defendant shall not be found within the district.*" (Emphasis added). The issue before us now is whether the Ostermunchners could be found within the Middle District of Florida at the time appellant filed this action.

■ Guidelines for answering this question are not provided by the Supplemental Rules; however, federal case law has established a two-prong test for determining whether a defendant can be found "within the district." First, can the defendant be found within the district in terms of jurisdiction? Second, can the defendant be found within the district for service of process? If the answer to both questions is affirmative, then the defendant can be found "within the district" for the purposes of Rule B(1), and the process of attachment and garnishment is not available to the plaintiff. *See Seawind Compania, S.A. v. Crescent Line, Inc.,* 320 F.2d 580 (2d Cir. 1963); *State of Oregon, State Highway Commission v. Tug Go Getter,* 398 F.2d 873 (9th Cir. 1968).

Discussion of the first prong of this test is not necessary here. Both parties agree that the Ostermunchners' activity within the district at the time of appellant's injury sufficiently constitutes the "minimum contacts" necessary to provide jurisdiction. It is the answer to the second prong of the test with which the parties disagree. Appellant argues that the Ostermunchners returned to Venezuela immediately after the boat accident and that they have no authorized agent or representative in the Middle District of Florida on whom process could

be served; therefore, they could not be found within the district for personal service of process, and the process of attachment and garnishment was appropriate. Appellees' response to this argument is technical and confusing. Florida has a nonresident watercraft statute, similar to a nonresident motorist act, which allows service of process on the Florida Secretary of State as a defendant's "appointed" representative whenever a nonresident defendant is involved in an accident on Florida waters.[1] The Ostermunchners contend that the Florida Secretary of State was therefore authorized to accept service of process in this case, and thus they could have been found "within the district" at the time this action was filed.[2] However, service of process on the Florida Secretary of State can be accomplished only in the state capitol within the Northern District of Florida, and not in the district where this action was filed. Appellees attempt to circumvent this problem by relying on Rule 4(f) of the Federal Rules of Civil Procedure, 28 U.S.C., which allows valid service of process within any district of the same state.[3] In other words, appellees' position is that service of process "within the district" as required by Supplemental Rule B(1) is modified by Rule 4(f) to mean service within the state, and therefore the Ostermunchners could have been found "within the district" by serving the Florida Secretary of State in Tallahassee. We believe that the lower court erred when it relied on this reasoning and granted the appellees' motion to quash the process of attachment and garnishment.

■ Service of process "within the district" as contemplated by Supplemental Rule B(1) is not expanded by Rule 4(f) to include statewide service of process. The drafters of the Supplemental Rules specifically addressed this point.

---

**1.** *See* Fla.Stat.Ann. § 48.19 (West.Supp.1981).

**2.** The validity of using substituted service from a state watercraft statute against a defendant in an admiralty case was established in *S. S. Philippine Jose Abad Santos v. Bannister,* 335 F.2d 595 (5th Cir. 1964).

**3.** Fed.R.Civ.P. 4(f) states: "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held...."

A change in the context of the practice is brought about by Rule 4(f), which will enable summons to be served throughout the state instead of, as heretofore, only within the district. The Advisory Committee considered whether the rule on attachment and garnishment should be correspondingly changed to permit those remedies only when the defendant cannot be found within the state and concluded that the remedy should not be so limited. Advisory Committee Notes to Rule B(1), Supplemental Rules for Certain Admiralty and Maritime Claims, 28 U.S.C. Moreover, the Supplemental Rules expressly prevent application of Rule 4(f) to other areas of the attachment process. Supplemental Rule E(3)(a) states that "[p]rocess in rem and of maritime attachment and garnishment shall be served only within the district." Accordingly, we believe that Supplemental Rule B(1) allows maritime attachment whenever a defendant cannot be served with process within the particular district, regardless of the presence of an authorized agent in another district of the same state. Therefore, the lower court erred when it quashed the maritime attachment in this case. The Ostermunchners could not be served with process through the Florida Secretary of State *in* the Middle District of Florida, and having no other representative in that district, they could not be found "within the district" for the purposes of Supplemental Rule B(1).[4]

Relevant case law is not entirely consistent with our decision in this case. In *Chilean Line Inc. v. United States*, 344 F.2d 757 (2d Cir. 1965), the Second Circuit held that the presence of an agent in one district of New York could prevent a maritime attachment in another district because of the statewide service provisions of Rule 4(f).

The *Chilean Line* decision, however, specifically relied on various provisions in a draft proposal for unified civil and admiralty rules of procedure; these same provisions were eventually deleted from the rules which were adopted. Accordingly, district courts in the Second Circuit have not followed *Chilean Line* and have reached the same conclusion as we reach here. *See East Asiatic Co., Ltd. v. Indomar, Ltd.*, 422 F.Supp. 1335 (S.D.N.Y.1976); *Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.*, 476 F.Supp. 119 (S.D.N.Y. 1979). The district court below relied on *Nea Armonia Shipping Co., Ltd. v. Antco Shipping Co., Ltd.*, 409 F.Supp. 967 (M.D. Fla.1976), which interpreted the Supplemental Rules in a manner similar to the court in *Chilean Line*. We have not had a previous opportunity to review the decision in *Nea Armonia*, but now hold that the district judge in that case reached an incorrect result. *See* 7A *Moore's Federal Practice* ¶ B.06 at 34 (2d Ed.Supp. 1980–81).

For all of the above reasons, we find that an admiralty defendant cannot rely on the statewide service of process provisions of Fed.R.Civ.P. 4(f) to defeat a maritime attachment. In order to be found "within the district" as contemplated by Supplemental Rule B(1), a defendant must be susceptible to service within the actual district. Therefore, the district court erred in granting appellees' motion to quash the maritime attachment.

REVERSED.

---

4. We recognize that the result of our interpretation of the Supplemental Rules will be an odd distinction between single district and multi-district states. For instance, if Florida were a single district state, then the district court's action would have been proper. However, we believe this distinction was intended by Congress and is consistent with traditional admiralty practice. Moreover, the facts of this case are exactly the situation for which the process of maritime attachment was originally created. Maritime attachment has two purposes: First, to secure a defendant's appearance; second, to assure satisfaction in case the plaintiff is successful. *Swift & Co. v. Compania Colombiana*, 339 U.S. 684, 693, 70 S.Ct. 861, 867, 94 L.Ed. 1206 (1950). Without a maritime attachment, Mr. LaBanca would have little hope of securing the appearance of, or satisfying a judgment against, Venezuela citizens.