**CARIBBEAN YACHT WORKS, LTD., Plaintiff,**

v.

**M/V "NEENAH Z," U.K. Registration No. 909218, its engines tackle equipment and appurtenances, in rem, Defendant.**

**No. 05–60962–CIV.**

United States District Court, S.D. Florida.

Aug. 1, 2005.

Christopher Rogers Fertig, Jeremy Michael Zubkoff, Fertig & Gramling, Fort Lauderdale, FL, John E. Sweeney, John E. Sweeney and Associates, Westlake Village, CA, Todd D. Lochner, Lochner & Schwenk LLC, Annapolis, MD, for Caribbean Yacht Works, Ltd., Plaintiff.

Farris James Martin, III, Stroup & Martin, James Weller Stroup, Stroup & Martin, Robert Lyston Jennings, Jennings & Valancy, Fort Lauderdale, FL, for M/V Neenah Z, U.K. Registration Number 909218, its engines, tackle, equipment, and appurtenances, in rem, Adventure Charters, Ltd., with its principal place of business at Prospect Chambers, Prospect Hill, Douglass, Isle of Man 1M1 1ET, Defendants.

## OMNIBUS ORDER

HUCK, District Judge.

THIS CAUSE is before the Court upon Claimant/Owner Adventure Charter's Emergency Motion for Release of a Vessel (D.E.# 15) and Plaintiff's Motion to Amend the Complaint (D.E.# 21). Having reviewed the parties' submissions and other pertinent portions of the record, having heard arguments of counsel in open court at hearings conducted on July 5, 2005, July 13, 2005, and July 29, 2005, and being otherwise duly advised in the premises, the Court hereby DENIES Adventure Charter's Emergency Motion and GRANTS Plaintiff's Motion to Amend the Complaint for the reasons stated below.

## BACKGROUND

On June 15, 2005, Plaintiff filed an *in rem* complaint against the M/V Neenah Z (the "Vessel") based on the alleged non-payment for its provision of necessaries to the Vessel. In the original complaint, Plaintiff alleged that the Vessel "is and was at all relevant times owned by Michael Zubi," Complaint ¶ 5, and alleges a number of actions taken by Mr. Zubi. *See id.* ¶¶ 7, 9–11, 13. Plaintiff also filed a Motion for *In Rem* Arrest of the Vessel pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule C").

On June 27, 2005, Adventure Charters Limited, an Isle of Man limited company, filed a Verified Claim of Owner (D.E.# 14) as the owner of the Vessel. Mr. Zubi signed the verification for the claim as "the authorized agent" for Adventure Charters. Adventure Charters simultaneously filed its emergency motion for release of the Vessel on the grounds that the arrest was wrongfully obtained under Rule C because Plaintiff does not have a maritime lien against the Vessel. Adventure Charters also asserted that Plaintiff could not alternatively arrest the Vessel in an *in personam* action pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule B"), which only applies where "a defendant is not found within the district."

Adventure Charters states that it was "found within the district" for purposes of Rule B because Mr. Zubi was its authorized agent and was present within the district through business dealings and real property ownership. Adventure Charters also alleges that it was "found within the district" by appointing Stroup & Martin as its agent for purposes of service of process. Emergency Motion ¶ 20. Plaintiff was informed of this appointment by letter dated June 22, 2005—one week after the filing of the original complaint. *Id.* Exh. B.

Plaintiff responded to the Emergency Motion in part by requesting that the

Court treat the action as though it had been originally filed pursuant to Rule B. According to Plaintiff, the arrest of the Vessel would have been appropriate under Rule B because Adventure Charters was not "found within the district." Therefore, Plaintiff requested leave to amend the complaint to assert an *in personam* claim against Adventure Charters as the owner of the Vessel under Rule B and convert the Rule C arrest to a Rule B attachment.

## ANALYSIS

Adventure Charters argues that the Vessel must be immediately released from Rule C arrest because: (1) Plaintiff could not invoke Rule C in the absence of a maritime lien against the Vessel; (2) Plaintiff cannot convert the Rule C arrest into a Rule B attachment; (3) even if such conversion is permitted, Plaintiff fails to satisfy the standards for Rule B attachment; and (4) even if Rule B attachment is appropriate, Plaintiff has improperly sought leave to amend the complaint to add a Rule B claim.[1] In open court on July 5, 2005, Plaintiff conceded that it improperly invoked Rule C. Each of Defendant's remaining arguments is addressed in turn.

### A. Conversion from Rule C Arrest to Rule B Attachment

 Adventure Charters first alleges that it is improper for the Court to convert the Rule C arrest into a Rule B attachment. However, the Court finds that a Rule C *in rem* action may be treated as a "technical pleading error" to be corrected by conversion to a Rule B *in personam* action where "there is no prejudice to the other side." *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 989 (5th Cir. 1992). *See also Heidmar, Inc. v. Anomina Ravennate Di Armamento Sp.A. of Ravenna*, 132 F.3d 264, 268 (5th Cir.1998) (allowing conversion where *in personam* defendant "has not alleged that it has suffered any prejudice from [plaintiff]'s mistake in seeking arrest under Rule C instead of attachment under Rule B").

 Adventure Charters argues that, contrary to the Fifth Circuit decisions cited above, the conversion of a Rule C action to one under Rule B is prohibited under Eleventh Circuit precedent. In *Trinidad Foundry & Fabricating, Ltd. v. M/V K.A.S. Camilla*, 966 F.2d 613 (11th Cir. 1992), the plaintiff filed an *in rem* action under Rule C in district court in November 1990. The district court dismissed the *in rem* action against the vessel for lack of jurisdiction in the absence of a maritime lien. The Eleventh Circuit affirmed that finding of lack of jurisdiction. *Id.* at 616–17. The Eleventh Circuit also reviewed *Sembawang* to address that court's allowing the plaintiff to convert its Rule C proceeding to a Rule B proceeding.[2] The Eleventh Circuit stated:

> Although the *Sembawang* court's reasoning is analogous to our reasoning in

---

1. As an initial matter, the Court notes that Plaintiff was not required to file a motion for leave to amend the complaint. "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served ...." Fed.R.Civ.P. 15(a). No responsive pleading has been filed in the presence of only a verified claim and motion for release of the Vessel. *See* Fed.R.Civ.P. Supp. R. C(6)(b)(I), (iv) (*distinguishing* between owner's verified statement of interest and answer); S.D. Fla. L. Adm. R. C(6) (same). *Cf. Fortner v. Thomas*, 983 F.2d

1024, 1032 (11th Cir.1993) ("It is well established in this circuit that a motion to dismiss is not considered a responsive pleading for purposes of rule 15(a)."). Rather, the issues presently before the Court are the substantive merits of the amendment (conversion from Rule C to Rule B) and its compliance with rules of procedure (relation back to the original complaint and filing without a proposed amended complaint).

2. The Eleventh Circuit merely stated that it had "reviewed" *Sembawang* without indicating that that case had been previously briefed

almost all respects, we disagree with that part of its holding allowing the repairer to proceed under Rule B because of our view that the Camilla would be prejudiced if we allowed Trinidad to proceed under Rule B at this late stage of the litigation.

*Id.* at 617.

In other words, the Eleventh Circuit distinguished *Sembawang* solely on the fact that prejudice would arise from a conversion approximately 20 months after the filing of the complaint. In so doing, the Eleventh Circuit appears to be consistent with the Fifth Circuit in that a conversion from Rule C to Rule B would be appropriate in the absence of prejudice—or, at least, at an earlier stage of the litigation. *See Dannebrog Rederi AS v. M/Y True Dream,* 146 F.Supp.2d 1307, 1314 (S.D.Fla. 2001) (interpreting *Trinidad Foundry* as "agree[ing] with the *Sembawang* court's reasoning in almost all respects, except for the part of the holding regarding prejudice to the defendant"). In the wake of *Trinidad Foundry,* other courts in this district have determined the propriety of a conversion based on whether the defendant has demonstrated prejudice therefrom. *See, e.g., id.* at 1316 (finding proposed conversion prejudicial because "significant events occurred during the five month period between the issuance of the order vacating the Rule C arrest of the [vessel] and [plaintiffs]' filing of their motion to amend the complaint to add Rule B allegations"); *Madredeus Shipping Co. Ltd. v. Century Bridge Chartering Co. Ltd.,* 2000 WL 1205336, *2 (S.D.Fla. Feb. 11, 2000) (amendment to add Rule B claim made ten days after filing of original complaint was "correction of a technical pleading error [that] will not prejudice the claimant owner"). *See also Dannebrog Rederi AS,* 146

F.Supp.2d at 1317 (distinguishing *"Heidmar* and *Madredeus,* where the issue of conversion of a Rule C to a Rule B claim was addressed simultaneous or very close to the motions to vacate and prior to appeal").

Here, Plaintiff filed its Rule C action on June 15, 2005, and moved to amend the complaint for conversion to Rule B on July 1, 2005. This two-week period is a far cry from the "late stage of the litigation" in *Trinidad Foundry,* and effectuates little—if any—prejudice on Adventure Charters. Indeed, Adventure Charters has demonstrated no concrete prejudice from such a conversion "simultaneous or very close to" the Rule C arrest. *Id.* Adventure Charters speaks in only abstract terms that "[t]o allow such amendment would prejudice [it] by disregarding the protection afforded to property owners under Supplemental Rule B and Local Admiralty Rule B." Claimant/Owner's Supplemental Memo. at 4. According to Adventure Charters, that "protection" is a "meaningful post-attachment hearing" that conversion allegedly imperils by "bur[ying] the time line of what was known and reasonably available to [Plaintiff] pre-suit and now." *Id.* at 5. However, Plaintiff's counsel has submitted an affidavit of its investigation and knowledge "both at the time of the original complaint . . . and currently." Affidavit of Todd D. Lochner, Esq. (dated July 28, 2005) ¶ 2. At the post-attachment hearing currently scheduled for August 11, 2005, Adventure Charters can question Plaintiff's counsel and other witnesses about Plaintiff's knowledge both before and after the filing of the original complaint. Therefore, Adventure Charters' proclamation of prejudice rings hollow.

Accordingly, the Court finds that the Rule C arrest may be converted to a Rule B attachment at this stage of the litigation.

or otherwise raised by the parties at any earlier moment in the litigation. Indeed, the *Sem-* *bawang* decision was released just four months before the *Trinidad Foundry* decision.

### B. Rule B Attachment

Adventure Charters next argues that, even if conversion is possible, Plaintiff has failed to satisfy the requirements for a Rule B attachment. The Court disagrees.

In a Rule B *in personam* action, the plaintiff may seek to attach the personal property of a defendant if that defendant is "not found within the district." Fed.R.Civ.P. Supp. B(1)(a). The local rules define that phrase as meaning that "the defendant cannot be served within the Southern District of Florida with the summons and complaint as provided by Fed. R.Civ.P. 4(d)(1), (2), (3), or (6)." S.D. Fla. L. Adm. R. B(1).[3] *See also LaBanca v. Ostermunchner*, 664 F.2d 65, 67 (5th Cir. 1981) (determining "within the district" in terms of jurisdiction and service of process). The defendant's presence in the district is determined as of "the time the complaint is filed." *Heidmar, Inc.*, 132 F.3d at 268. *See also LaBanca*, 664 F.2d at 67 ("The issue before us now is whether [defendant] could be found within the [district] at the time [plaintiff] filed this action."). More specifically, where a Rule C arrest is converted to a Rule B attachment, the relevant time is the filing of the original Rule C action. *See Heidmar, Inc.*,

132 F.3d at 268 (allowing "the conversion of the Rule C arrest to a Rule B attachment to relate back to the original filing of the complaint").[4]

In support of its request for Rule B attachment, the plaintiff must submit an affidavit "stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district." Fed.R.Civ.P. Supp. R. B(1). The purpose of the affidavit is to "assure[ ] the district court that the plaintiff has been diligent in searching for the defendant within the district in which the action is filed." *Submersible Sys., Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 422 (5th Cir.2001). *See also West of England Ship Owners Mut. Ins. Ass'n (Luxembourg) v. McAllister Bros., Inc.*, 829 F.Supp. 122, 124 (E.D.Pa.1993) ("In order to satisfy the due diligence requirement, plaintiff must make a bona fide effort to locate the defendant within the district."). "Due diligence merely requires reasonable efforts. It does not demand that plaintiff exhaust every conceivable source of information." *Id.*

Adventure Charters contends that Plaintiff failed to exercise diligence in not identifying Mr. Zubi as its agent and Mr. Zubi's presence within the district.[5] As an

---

**3.** This local rule refers to an outdated version of Rule 4 of the Federal Rules of Civil Procedure, which no longer contains subsections (d)(1)-(6). Rule 4(h) is the current provision applicable to Adventure Charters, and specifies that a foreign corporation may be served by delivery to an officer, a managing or general agent, or any other agent authorized to receive service of process. *See* Fed.R.Civ.P. 4(h).

**4.** This timing criterion is consistent with Rule 15(c)(3) of the Federal Rules of Civil Procedure, which allows an amendment changing the party to relate back to the date of the original complaint where, as here, the claim asserted "arose out of the conduct, transac-

tion, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R.Civ.P. 15(c)(3).

**5.** The Court notes that the Rule B *in personam* action is against Adventure Charters as the owner of the Vessel whose personal property may be attached. Therefore, it is Adventure Charters which must not have been "found within the district." The Court declines Plaintiff's invitation to "pierce the corporate veil" for present purposes. However, at the same time, the Court discredits Adventure Charters' attempt to attach significance to Mr. Zubi's appearance in the district merely in his individual capacity. In other words, Adventure Charters cannot simultaneously ar-

initial matter, it does not even appear that Mr. Zubi is an agent of Adventure Charters. Mr. Zubi stipulated that he is not a director or officer of Adventure Charters. *See* Transcript of Deposition of Michael Zubi ("Zubi Dep. Tr.") at 9. Mr. Zubi otherwise baldly asserts that he is a "managing agent" or the "beneficial owner" of Adventure Charters. *Id.* at 7, 9. The Court has reviewed the official Isle of Man corporate records concerning Adventure Charters. Those records do not support Mr. Zubi's assertion. Mr. Zubi is identified nowhere in Adventure Charters' corporate records as a director, officer, agent, or shareholder. *See* Plaintiff's Memorandum of Law Regarding Presence of Adventure Charters Ltd. in the Jurisdiction (D.E.# 40) Exh. A. *See also* Zubi Dep. Tr. at 19, 24.[6] Nor is Mr. Zubi registered either in the State of Florida or the Isle of Man as having any position or ownership interest in Adventure Charters. *Id.* at 33. Therefore, it appears that Mr. Zubi is not even actually authorized to accept service of process on behalf of Adventure Charters.

Even if Mr. Zubi were an agent of Adventure Charters, there is no public record from which Plaintiff could learn that fact. Indeed, there appears to be no public record of *any* agent of Adventure Charters in this district. As Mr. Zubi testified in deposition, Adventure Charters is not registered with the State of Florida and has no office in this district. *See id.* at 31–33. Adventure Charters itself owns no property, has no telephone number, and has no financial accounts in Florida. *Id.* at 33, 35–36, 39. Moreover, the only listed directors and officers of Adventure Charters are British nationals with addresses in the Isle of Man. *Id.* Exh. 3.

Plaintiff's counsel has submitted an affidavit detailing its investigation into the whereabouts of Adventure Charters. *See* Affidavit of Todd D. Lochner, Esq. (dated July 28, 2005). Plaintiff's counsel: (1) confirmed with the Florida Department of State that Adventure Charters was not authorized to conduct business in the state and had not appointed an agent for service of process; (2) found no officer, directors, or corporate officers of Adventure Charters within the district; and (3) found no public documents available from the Isle of Man showing any connection between Adventure Charters and Mr. Zubi. *Id.* ¶¶ 3–5.

These efforts demonstrate the requisite diligence in attempting to locate a defendant for purposes of a Rule B attachment. *See West of England,* 829 F.Supp. at 124 (finding sufficient efforts in searching telephone directories and contacting state regulators). This is so even if Plaintiff knew that Mr. Zubi was located within the district, absent further knowledge that Mr. Zubi was an agent of Adventure Charters for purposes of service of process. *See Transamerica Leasing Inc. v. Amazonica, S.A.,* 1997 WL 834554, *3 (S.D.Ala. June 26, 1997) (awareness of general agent within district is insufficient because "mere knowledge that a shipowner has an agent is not tantamount to knowledge that service of process on the agent would be effective"); *West of England,* 829 F.Supp. at 124 (plaintiff not required to search for alleged officer where "there is no evidence

---

gue that the corporate veil should not be pierced, but that Plaintiff could have served Mr. Zubi regardless of his actual legal relationship with Adventure Charters.

**6.** Mr. Zubi's name does appear in connection with Adventure Charters in a "Declaration of Trust." Zubi Aff. Exh. 1, 2. However, Mr. Zubi testified that he did not know if those documents were publicly available. *Id.* at 24, 79–83. Moreover, those documents merely indicate that Mr. Zubi and his wife owned two shares in Adventure Charters, without any indication of what percentage of ownership that constituted or any other interest or position held by Mr. Zubi.

that plaintiff was aware that [alleged officer] was an officer of defendant or that plaintiff could have obtained this information through due diligence").

The only evidence of Adventure Charters' location in this district arose after the filing of the original complaint on June 15, 2005. Specifically, Stroup & Martin informed Plaintiff of its appointment as agent for Adventure Charters on June 22, 2005. Moreover, the only hints of Mr. Zubi's purported role as "managing" or "authorized" agent of Adventure Charters have been in the course of this litigation after the filing of the original complaint. Yet the post-complaint appointment of agents for service of process is ineffectual to establish that an owner may be "found within the district" as contemplated for purposes of Rule B attachments. *See Heidmar*, 132 F.3d at 267 (appointment of agent fifteen minutes after filing of complaint does not render defendant "within the district" for purposes of Rule B).

Despite its lack of success, Plaintiff appears to have exercised due diligence in trying to locate an agent of Adventure Charters within this district. Indeed, at the time of the filing of the complaint, Plaintiff could not readily determine—from public records or any other source—that Adventure Charters could be "found within this district." Accordingly, a Rule B attachment is appropriate in these circumstances.

#### C. *Motion to Amend*

Finally, Adventure Charters raises a procedural argument that Plaintiff's Motion to Amend the Complaint should be denied because it was not accompanied by a proposed amended complaint. Rule 15.1 of the Local Rules of the United States District Court for the Southern District of Florida provides that "[a] party who moves to amend a pleading shall attach the original of the amendment to the motion."

Plaintiff failed to comply with this rule in the filing of the motion. However, that local rule later states that "failure to comply with this rule is not grounds for denial of the motion." Moreover, Plaintiff produced an original of the amended complaint in open court on July 29, 2005. Therefore, the late filing of the amended complaint is not a basis for denying Plaintiff's motion for leave to amend.

### CONCLUSION

For the reasons stated above, it is hereby

ORDERED that Claimant/Owner Adventure Charter's Emergency Motion for Release of a Vessel (D.E.# 15) is DENIED and Plaintiff's Motion to Amend the Complaint (D.E.# 21) is GRANTED. The Verified Amended Complaint is deemed filed as of July 29, 2005. Adventure Charters shall respond to the Verified Amended Complaint on or before August 15, 2005.